# Exhibit A

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1. PADRES UNIDOS DE TULSA;
2. XIMENA MONSERRAT LOPEZ MENA,

    *Plaintiffs*,

v.

1. GENTNER DRUMMOND, in his official capacity as Attorney General of the State of Oklahoma;
2. TIM TIPTON, in his official capacity as Commissioner of Public Safety for the Oklahoma Department of Public Safety;
3. VICKI BEHENNA, in her official capacity as District Attorney of Oklahoma County;
4. STEVE KUNZWEILER, in his official capacity as District Attorney of Tulsa County,

    *Defendants*.

Civil Action 5:24-cv-526-J

## AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

## INTRODUCTION

1.  This action challenges Oklahoma House Bill 4156 ("H.B. 4156"), which purports to give Oklahoma state officials unprecedented power to arrest, detain, and expel noncitizens. Under this novel system, the State of Oklahoma has created its own immigration crimes, completely outside the federal immigration system. State police will arrest noncitizens for these entry and re-entry crimes; state prosecutors will bring charges in state courts; and state judges will issue removal orders requiring people to leave the State. The federal government has no role in, and no control over, Oklahoma's immigration scheme.

2.  H.B. 4156 violates the Supremacy Clause of the United States Constitution. Immigration is a quintessentially federal authority. Congress has created a carefully calibrated immigration system, with detailed provisions governing people's entry into the United States and their right to remain here. And Congress placed all the relevant tools and decision-making in the hands of *federal* officials—in keeping with the federal government's exclusive immigration powers and the sensitive foreign policy implications of these powers.

3.  H.B. 4156 jettisons this system, grasping control over immigration from the federal government and giving state officers the power to prosecute immigration crimes on their own and banish people from the State. In doing so, H.B. 4156 declares the State off-limits to entire categories of immigrants, most of whom have express federal permission to be in the United States.

4. H.B. 4156 also violates the Commerce Clause because it impermissibly regulates people's entry into Oklahoma and imposes unacceptable burdens on interstate and foreign commerce.

5. Plaintiffs hereby file this complaint for declaratory and permanent injunctive relief. Plaintiffs will seek a preliminary injunction to enjoin enforcement of H.B. 4156 in advance of the law's July 1, 2024 effective date.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Western District of Oklahoma because a substantial portion of the relevant events occurred or will occur in the District and because Defendants reside in the District. 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff Padres Unidos de Tulsa ("Padres Unidos") is a membership-based advocacy organization consisting of students, parents, and teachers. It is based in Tulsa, Oklahoma.

9. Padres Unidos's mission is to ensure that Latinx immigrant students and their families can advocate for a quality education for all Tulsa Public School System students. The organization builds advocacy skills and organizes Latinx and immigrant communities to secure meaningful access to the full range of educational services,

including mental health resources, meal assistance, special education services, and reading and math achievement.

10. Members of Padres Unidos work collectively to ensure that schools, school boards, and superintendents provide equitable resources to their students and children. The community that Padres Unidos works with will be directly affected by the disruption, uncertainty, and fear created by H.B. 4156, and members of Padres Unidos include individuals who would be subject to prosecution under H.B. 4156.

11. Padres Unidos member M.A. is a 47-year-old national of Mexico who lives in Tulsa, Oklahoma in Tulsa County. M.A. lives with her husband and six children, all of whom are U.S. citizens. She has been a member of Padres Unidos since 2022. M.A. entered the United States without inspection in 1993 and has lived in the country continuously since then. M.A. has applied for lawful permanent residence status through her U.S. citizen son. That process will take approximately another year to complete.

12. Plaintiff Ximena Monserrat Lopez Mena is a 20-year-old national of Mexico who lives in Oklahoma City, Oklahoma in Oklahoma County. Ms. Lopez Mena lives with her parents and siblings. She was brought to the United States in 2004 as a baby and entered without inspection. Ms. Lopez Mena has lived in Oklahoma since then. She applied for the Deferred Action for Childhood Arrivals ("DACA") program in 2016, but at the time the program was not taking new applications. She applied again in 2020 to the same result.

13. Plaintiff Jordy Madrigal Martinez is a 30-year-old national of Nicaragua who lives in Oklahoma City. He entered the United States without inspection in 2018, was placed in expedited removal proceedings, but passed his credible fear interview. He was then released to pursue asylum as part of his regular removal proceedings while living in the United States. He lives with his wife, and is applying for a green card, but the application has not yet been adjudicated.

14. Plaintiff Antonio Marquez is a 50-year-old Mexican national who lives in Oklahoma City with his wife, stepdaughter, and granddaughter. He entered the United States in 1996, 1998, and 2004. In 2009 he was apprehended by ICE and left the country. He reentered the United States without inspection in 2010. He is currently in removal proceedings and has applied for cancelation of removal. His I-130 has been approved, but he has not received any decision on his cancelation of removal application or his removal proceedings.

15. Plaintiff Rene Doroteo Hernandez is a 31-year-old Mexican national who lives in Oklahoma City with his wife and daughters. He entered the United States without inspection in 2009. After being apprehended by immigration authorities, he left the country, and then returned again without inspection. He has filed an I-130 petition and an application for parole in place, but neither has been adjudicated yet.

16. Defendant Gentner Drummond is the Attorney General of the State of Oklahoma. He is the "chief law officer of the state" and has the duty to "appear for the state" and "prosecute . . . criminal" actions in state and federal courts, including actions to enforce H.B. 4156. Okla. Stat. tit. 74 §§ 18, 18b. He is sued in his official capacity.

5

17. Defendant Drummond urged legislators to pass H.B. 4156 and was involved in drafting portions of the bill. He has publicly stated his strong support for the law, applauding legislators for taking "swift action in making the bill a reality." Defendant Drummond also stated that H.B. 4156 is required due to "the consequences of the Biden Administration's utter failure to secure our nation's border."

18. Defendant Tim Tipton is the Commissioner of Public Safety for the Oklahoma Department of Public Safety ("DPS"). Among other duties, he has the "right and power . . . to enforce the criminal laws of the state," including H.B. 4156. Okla. Stat. tit. 47 § 2-117. He is sued in his official capacity.

19. Defendant Vicki Behenna is the District Attorney of Oklahoma County. Defendant Behenna has the duty to "diligently prosecute any violations" of state criminal laws in the county, including H.B. 4156. Okla. Stat. tit. 21 § 21-1305. She is sued in her official capacity.

20. Defendant Steve Kunzweiler is the District Attorney of Tulsa County. Defendant Kunzweiler has the duty to "diligently prosecute any violations" of state criminal laws in the county, including H.B. 4156. Okla. Stat. tit. 21 § 1305. He is sued in his official capacity.

## STATEMENT OF FACTS

**A. Legal Background: Comprehensive Federal Immigration System**

21. The federal government has exclusive power over immigration. *See, e.g., Arizona v. United States*, 567 U.S. 387, 394-95 (2012).

22. Congress has created a comprehensive system of federal laws regulating immigration in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101 et seq.

23. Federal immigration statutes and the associated implementing regulations and precedential administrative law decisions form an exceptionally detailed, complex, and finely reticulated regulatory regime. Congress has frequently amended the relevant provisions of the INA, including by passing particularly significant legislation in 1952, 1965, 1980, 1986, 1990, 1996, 2000, 2001, 2005, and 2008, along with dozens of other Acts modifying the immigration regime in countless ways. Immigration legislation is proposed in every single Congress and frequently forms a point of major national debate.

24. The INA contains complex and exclusive procedures for determining immigration and citizenship status and for determining whether an individual may lawfully remain in the United States, either temporarily or permanently. *See, e.g.*, 8 U.S.C. § 1229a(a)(3). Under federal law, there is no single, readily ascertainable category or characteristic that establishes whether a particular person may or may not be permitted to remain in the United States. The answer to that question can only be reached through the processes outlined in the INA and may depend on the discretionary determinations of federal officials.

25. Many people who enter the United States without inspection ultimately obtain federal authorization to remain in the United States temporarily, indefinitely, or permanently.

26. Congress has established that entry into the United States is a crime under certain circumstances. 8 U.S.C. § 1325 ("Improper Entry by Alien") provides criminal penalties for noncitizens who, inter alia, enter the United States at any time or place other than as designated by immigration officers. 8 U.S.C. § 1326 provides criminal penalties for noncitizens who reenter the United States without authorization after entry of an order of removal.

27. Congress also created specific procedures to remove individuals from the United States. These are generally called removal proceedings and can take multiple forms. *See, e.g.*, 8 U.S.C. § 1229a (full removal proceedings); 8 U.S.C. § 1225 (expedited removal proceedings); 8 U.S.C. § 1231(a)(5) (reinstatement of removal proceedings). Under federal law, people are allowed to remain in the United States while administrative removal proceedings prescribed by the INA are pending.

28. Prosecution for the federal entry and reentry crimes and the decision whether to pursue the removal of a given person from the country, and through what mechanism, are matters of federal discretion. Federal agents and policymakers may choose to deploy these tools—or not—for a wide range of reasons, including national priorities, migration patterns, international relationships, and humanitarian concerns.

**B. H.B. 4156**

29. On April 30, 2024, Governor Stitt signed H.B. 4156 into law. Its effective date is July 1, 2024.

30. H.B. 4156 creates two new state law offenses: "State Illegal Entry" and "State Illegal Reentry." H.B. 4156 §§ 2(B), (D) (codified at Okla. Stat. tit. 21, § 1795(B), (D)).

31. Each of these offenses can only be committed by an "alien," meaning any person who is not a citizen or national of the United States. H.B. 4156 § 2(A) (codified at Okla. Stat. tit. 21, § 1795(A)).

32. A noncitizen commits an "impermissible occupation" ("State Illegal Entry") if they "willfully and without permission enter[] and remain[] in the State of Oklahoma without having first obtained legal authorization to enter the United States." H.B. 4156 § 2(B) (codified at Okla. Stat. tit. 21, § 1795(B)).

33. "[A]ffirmative defense[s] to prosecution" for State Illegal Entry exist when a noncitizen has been granted "lawful presence" or "asylum" by the federal government, or if they have been approved for benefits under the federal Deferred Action for Childhood Arrivals (DACA) program. H.B. 4156 § 2(F) (codified at Okla. Stat. tit. 21, § 1795(F)). The statute does not define "lawful presence."

34. H.B. 4156 does not provide a defense for people currently seeking asylum, other humanitarian protection, or any other relief available under federal law.

35. A first violation of State Illegal Entry is a misdemeanor punishable by up to a year in county jail. Any subsequent violation is a felony punishable by up to two years in state prison. H.B. 4156 §§ 2(C)(1)-(2) (codified at Okla. Stat. tit. 21, § 1795(C)(1)-(2)).

9

36. H.B. 4156 also creates a crime of State Illegal Reentry. This provision makes it a crime if a noncitizen "enters, attempts to enter, or is at any time found in Oklahoma" after they have been "denied admission, excluded, deported, or removed, or ha[ve] departed the United States while an order of exclusion, deportation, or removal is outstanding." H.B. 4156 § 2(D) (codified at Okla. Stat. tit. 21, § 1795(D)).

37. A noncitizen is not subject to the State Illegal Reentry provision if (1) the U.S. Attorney General "expressly consented to [their] reapplying for admission" prior to their reentry, or (2) they were "not required to obtain such advance consent under this section or any prior statute." H.B. 4156 §§ 2(D)(1)-(2) (codified at Okla. Stat. tit. 21, § 1795(D)(1)-(2)).

38. A violation of State Illegal Reentry is punishable by up to two years in prison. H.B. 4156 § 2(D) (codified at Okla. Stat. tit. 21, § 1795(D)).

39. Noncitizens convicted of State Illegal Entry or State Illegal Reentry "shall be required to leave [Oklahoma] within seventy-two (72) hours following [their] conviction or release from custody, whichever comes first." H.B. 4156 §§ 2(C)(1)-(2); 2(D) (codified at Okla. Stat. tit. 21, § 1795(C)(1)-(2); (D)).

40. Noncitizens charged with or convicted of State Illegal Entry or State Illegal Reentry are not eligible for probation, delayed sentencing, or community sentencing. H.B. 4156 § 2(G); § 3 (codified at Okla. Stat. tit. 21, § 1795(G); Okla. Stat. tit. 22 § 988.25).

41. H.B. 4156 applies statewide, without any exception.

**C. The Effect of H.B. 4156 on Plaintiffs**

10

42. H.B. 4156 creates a new state system to regulate immigration that completely bypasses and conflicts with the federal system. It allows state officers to arrest, detain, and expel from Oklahoma noncitizens who are convicted of the new state crimes—all without any direction, input, or involvement whatsoever from federal officials.

43. H.B. 4156 requires state officers to make determinations of federal immigration status and to incarcerate noncitizens pursuant to these determinations. The law does not make any exceptions for people in the process of seeking or obtaining federal immigration status.

44. H.B. 4156 will uproot and expel thousands of immigrants from Oklahoma, including asylum seekers and immigrants applying for other federal immigration benefits and status. By subjecting these categories of immigrants to criminal punishment and a mandate to leave the State, H.B. 4156 effectively banishes large categories of immigrants who are entitled to remain in the United States while their cases are pending, and whom the federal government may eventually grant lawful status, permanent residence, and citizenship.

45. The Oklahoma Association of Chiefs of Police and Metro Law Enforcement Agency leaders have said that H.B. 4156 raises racial profiling concerns and "may deteriorate public trust in law enforcement in already vulnerable communities."

46. The harms of H.B. 4156 will be felt acutely by Padres Unidos, whose membership includes individuals who would be subject to prosecution, imprisonment, and removal from the state under the law.

47. One such individual is Padres Unidos member M.A., who has lived in Oklahoma for over thirty years. She volunteers for Padres Unidos to ensure educational access for all Tulsa Public School System students. M.A. is the primary caretaker for her mother, who has cancer and lives fifteen minutes away from her house. M.A. attends all medical appointments with her mother and runs all her errands. M.A. is also the primary caretaker for two of her sons who have ADHD, including one who has a benign cyst in his head and must attend regular medical appointments.

48. If H.B. 4156 goes into effect, M.A. could be separated from her entire family, including her mother and two sons who rely on her for care. Her mother is a lawful permanent resident and has no one else to care for her, as M.A.'s siblings are either in California or Mexico. If she were prosecuted under H.B. 4156 and forced to leave the state, M.A. would leave her family without needed emotional and medical care, and the communities and individuals she serves through her volunteer work without a trusted resource to help them with their educational advocacy. M.A. and her husband own their house in Tulsa and have spent the last three decades building their whole lives in Oklahoma. She is afraid that if she leaves the State to visit her siblings in California or for other reasons, she will be prosecuted under H.B. 4156 when she returns.

49. Plaintiff Ximena Monserrat Lopez Mena was brought to the United States in 2004, when she was one year old. Oklahoma is the only home she has ever known. She is currently in college studying to be a social worker. Ms. Lopez Mena lives in Oklahoma City with her father, mother, four siblings, and several extended family

12

members including grandparents, aunts, uncles, and cousins. Many of these family members, including all her siblings and her grandfather, are U.S. citizens.

50. Ms. Lopez Mena twice applied for DACA but was told that the program wasn't accepting any new applications. If H.B. 4156 goes into effect, she could be separated from her entire family and the only place she has called home. Ms. Lopez Mena does not have family in other parts of the United States. If she were removed from the State, she would be forced to drop out of her college and defer her dream of becoming a social worker. Ms. Lopez Mena has traveled outside the state before for business and vacation and is afraid that if she leaves the State again, as she plans to after July 1, 2024, she will be prosecuted under H.B. 4156 when she returns.

51. Plaintiff Jordy Madrigal Martinez would face severe hardship if he is detained or removed under H.B. 4156. He would be separated from his family, and unable to help care for his wife who has multiple medical problems. He has family in Louisiana and Florida, and frequently leaves the State of Oklahoma.

52. Plaintiff Antonio Marquez faces similar harm. He frequently leaves the State for work, but if he is detained or removed under H.B. 4156, he would be separated from his wife, stepdaughter, and granddaughter. He is the primary breadwinner for his family, and so enforcement of this law could leave his family without financial support.

53. Plaintiff Rene Dorotea Hernandez would likewise be separated from his wife and daughters if he is arrested or removed under H.B. 4156. He is their sole financial provider, and so he and his whole family would face extreme hardship if H.B. 4156 is enforced against him.

13

## CLAIMS FOR RELIEF

### Count One: Preemption; Equity

54. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

55. The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

56. Federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

57. H.B. 4156 violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority.

58. H.B. 4156 further violates the Supremacy Clause because it conflicts with federal laws, contradicts federal admission and release decisions, imposes burdens and penalties not authorized by and contrary to federal law, creates its own immigration classifications, and directs state officers to take unilateral immigration enforcement actions.

59. Plaintiffs may sue to obtain injunctive relief against H.B. 4156 in equity.

### Count Two: Commerce Clause; Equity; 42 U.S.C. § 1983

60. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

61. The Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause not only gives Congress this power, but also bars states from interfering with Congress's regulation of interstate commerce.

62. H.B. 4156 violates the Commerce Clause because it impermissibly regulates people's entry into Oklahoma and their movement across state and national borders. It therefore imposes unacceptable burdens on interstate and foreign commerce.

63. Plaintiffs may sue to obtain injunctive relief against H.B. 4156 in equity and under § 1983.

### Count Three: Eighth and Fourteenth Amendments to the U.S. Constitution; Equity; 42 U.S.C. § 1983

64. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

65. The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments." The Eighth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

66. Under H.B. 4156, state officers have the authority to imprison individuals who are found in violation of the offenses set forth in H.B. 4156.

67. H.B. 4156 violates the Eighth Amendment because it requires noncitizens convicted of state illegal entry or state illegal reentry to leave the State within seventy-

15

two hours of their conviction or release from custody. This effectively results in their banishment from the State and constitutes cruel and unusual punishment.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a. Declare that H.B. 4156 is unlawful in its entirety;

b. Preliminarily and permanently enjoin Defendants from enforcing H.B. 4156;

c. Grant Plaintiffs' cost of suit, reasonable attorneys' fees, and other expenses pursuant to 28 U.S.C. § 1988; and

d. Grant any other and further relief that this Court may deem fit and proper.

Dated: May 24, 2024                                Respectfully submitted,

Noor Zafar*                                        /s/ *Elissa Stiles*_____
Wafa Junaid*                                       Elissa Stiles (OK Bar. No. 34030)
Omar Jadwat*                                       Rivas and Associates
American Civil Liberties Union                     P.O. Box 470348
Foundation, Immigrants' Rights Project             Tulsa, OK 74147
125 Broad Street, 18th Floor                       T: (918) 419-0166
New York, NY 10004                                 F: (918) 513-6724
T: (212) 549-2660                                  *estiles@rivasassociates.com*
*nzafar@aclu.org*
*wjunaid@aclu.org*                                 Nicholas Espíritu*
*ojadwat@aclu.org*                                 Tanya Broder*
                                                   National Immigration Law Center
Spencer Amdur*                                     3450 Wilshire Blvd., No. 108-62
Oscar Sarabia Roman*                               Los Angeles, CA 90010
Cody Wofsy*                                        T: (213) 639-3900
American Civil Liberties Union                     F: (213) 639-3911
Foundation, Immigrants' Rights Project             *espiritu@nilc.org*
425 California Street, 7th Floor                   *broder@nilc.org*
San Francisco, CA 94104
T: (415) 343-0770                                  Megan Lambert (OK Bar. No. 33216)
*samdur@aclu.org*                                  Devraat Awasthi (OK Bar. No. 35544)

16

*osarabia@aclu.org*  
*cwofsy@aclu.org*

American Civil Liberties Union of Oklahoma Foundation  
P.O. Box 13327  
Oklahoma City, OK 73113  
T: (405) 525-3831  
*mlambert@acluok.org*  
*dawasthi@acluok.org*

*Attorneys for Plaintiffs*  
*\*Pro hac vice application forthcoming*