# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

PADRES UNIDOS DE TULSA, *et al.*

*Plaintiffs*,

v.

GENTNER DRUMMOND, *et al.*

*Defendants*.

Case No. 5:24-cv-00511-J

## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT

# MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs hereby respectfully move the Court for a temporary restraining order and preliminary injunction restraining Defendants from enforcing any provision of House Bill 4156 ("H.B. 4156") (codified at Okla. Stat. tit. 21, § 1795), which regulates the entry, presence, and expulsion from Oklahoma of noncitizens who have entered the United States without inspection. As this Court previously found, H.B. 4156 violates the Supremacy Clause of the United States Constitution. And as explained in the supporting brief, H.B. 4156 also violates the Commerce Clause and, absent expedited and preliminary injunctive relief, Plaintiffs will suffer immediate and irreparable harm. The United States has dismissed its action against Oklahoma, and Oklahoma has begun enforcing H.B. 4156. Accordingly, Plaintiffs respectfully request that the Court expedite a ruling on this motion.

1

## INTRODUCTION

This Court enjoined H.B. 4156 as a policy that impermissibly "undermine[s] federal law." *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1007 (W.D. Okla. 2024) (quoting *Arizona v. United States*, 567 U.S. 387, 400–02 (2012)).

Oklahoma appealed this Court's injunction. Before the Court of Appeals for the Tenth Circuit could consider the appeal, a new Administration voluntarily dismissed the United States's action against H.B. 4156. *See* Notice of Voluntary Dismissal, *United States v. Oklahoma*, No. 5:24-cv-00511-J (W.D. Okla. Mar. 14, 2025), ECF No. 50. The Tenth Circuit dismissed the appeal as moot and canceled argument. *See* Ord. at 2, *United States v. Oklahoma*, No. 24-6144 (10th Cir. Mar. 25, 2025). Oklahoma has taken that as license to begin enforcing H.B. 4156.[1] *See, e.g.*, *Oklahoma v. Falcon-Romo*, OKLA. STATE COURT NETWORK, https://perma.cc/QX3P-EYFJ (last visited May 9, 2025) (Case No. CM-2025-264, first charges filed under H.B. 4156).

The law has not changed, however. H.B. 4156 is the same law that this Court enjoined. Moreover, since this Court's decision, courts across the country have unanimously struck down laws like H.B. 4156, reaffirming 150 years of Supreme Court precedent that immigration is an *exclusively* federal power. *See United States v. Iowa*, 126 F.4th 1334, 1353 (8th Cir. 2025) (affirming the district court's injunction against S.F. 2340), *vacated on other grounds*, No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *Idaho Organization of Resource Councils v. Labrador*, No. 1:25-CV-00178-AKB,

---

[1] Plaintiffs do not concede that this Court's injunction is no longer in place.

2

2025 WL 1237305, at *20 (D. Idaho Apr. 29, 2025) (enjoining the Idaho ICE Act); Omnibus Ord. at 36-37, 47, *Fla. Immigrant Coal. v. Uthmeier*, No. 1:25-cv-21524-KMW (S.D. Fla. Apr. 29, 2025), ECF No. 67 ("Florida Ord.").

H.B. 4156 is creating chaos and enormous harms. Oklahomans, like Plaintiffs Barbara Boe and Christopher Coe[2]—long-time residents of Oklahoma who are undocumented and face arrest, prosecution, and expulsion from the State under H.B. 4156—and Padres Unidos de Tulsa ("Padres Unidos") and League of United Latin American Citizens Oklahoma City ("LULAC OKC"), organizations whose members are confronted with the same dangers, bring this case on behalf of a putative class. Many Oklahomans who have spent most of their lives in the State will suddenly face prosecution and banishment. They will be uprooted from the communities they have nurtured and separated from their families and loved ones.

Accordingly, Plaintiffs ask the Court to issue a preliminary injunction on an expedited basis.

## STANDARD OF REVIEW

A preliminary injunction should issue where Plaintiffs can demonstrate that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555

---

[2] Plaintiffs move to proceed in pseudonym, and a motion is forthcoming.

U.S. 7, 20 (2008)).

## ARGUMENT

**I.     Plaintiffs Have Standing to Challenge H.B. 4156.**

As a threshold matter, Plaintiffs have standing to challenge H.B. 4156. *See* Ord. at 2, *United States v. Oklahoma*, No. 24-6144 (10th Cir. Sept. 6, 2024) (granting prior individual plaintiffs' and Padres Unidos's motion to intervene); *United States v. Iowa*, 737 F. Supp. 3d 725, 740-45 (S.D. Iowa 2024) (similar plaintiffs showed standing); *Idaho*, 2025 WL 1237305, at *2-8 (same); Florida Ord. at 512 (same).

Individual Plaintiffs Barbara Boe and Christoper Coe demonstrate an injury-in-fact as required for standing because (1) they have "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) their intended future conduct is "arguably . . . proscribed by the statute," and (3) "the threat of future enforcement . . . is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160-64 (2014). They are "among the direct targets of" H.B. 4156, *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006), falling squarely within the "illegal entry" and "illegal reentry" crimes, respectively, *see* Ex. A, Declaration of Barbara Boe ¶¶ 5, 7; Ex. B, Declaration of Christopher Coe ¶ 5.

Plaintiffs Padres Unidos and LULAC OKC also have associational standing. For both organizations, at least one of their members is directly affected by H.B. 4156 and would therefore have standing to sue in their own right, the interest the organizations seek to protect are germane to their purposes, and neither the claims asserted nor relief requested requires the members to participate in the lawsuit. *See Speech First, Inc. v.*

4

*Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181 (2000)); *see also* Ex. C, Declaration of Michelle Lara ¶¶ 4, 9, 10-11 ("Padres Unidos Decl."); Ex. D, Declaration of Nicole Maldonado ¶¶ 5, 12, 13-14 ("LULAC OKC Decl.").

II.  **This Court Has Already Found Plaintiffs Are Likely to Succeed on the Merits.**

This Court found that Oklahoma "may not pursue polices that undermine federal law" and therefore enjoined Oklahoma from enforcing H.B. 4156. *Oklahoma*, 739 F. Supp. 3d at 1007. Nothing has changed since the Court's decision. Thus, Plaintiffs are likely to succeed on the merits of their claims.

A.  **H.B. 4156 violates the Supremacy Clause.**

This Court has already held that H.B. 4156 is likely field and conflict preempted. *See United States v. Oklahoma*, 739 F. Supp. 3d 985, 1002, 1004 (W.D. Okla. 2024).

H.B. 4156 is likely field preempted because the unlawful entry and reentry provisions of H.B. 4156, §§ 2(C) and 2(D), criminalize the same conduct already proscribed under federal law, namely under 8 U.S.C. §§ 1325 and 1326. *See id.* at 997-98. This Court found the Supreme Court's ruling in *Arizona v. United States*—where the Supreme Court struck down S.B. 1070 because its noncitizen registration requirement intruded on a field occupied by federal law—instructive. *See id.* at 998 (citing *Arizona*, 567 U.S. at 400-02). Citing other circuit courts that extended *Arizona*'s reasoning to preclude state attempts to criminalize activities comprehensively regulated under federal law, this Court found that Congress similarly "legislated so comprehensively in the field

5

of noncitizen entry and reentry that it left no room for . . . Oklahoma's attempt to parallel federal law . . . ." *See id.* at 999 (citing *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1263–64 (11th Cir. 2012); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1024–26 (9th Cir. 2013); *United States v. South Carolina*, 720 F.3d 518, 531–32 (4th Cir. 2013)).

The same is true for H.B. 4156's expulsion penalty. *See Oklahoma*, 739 F. Supp. 3d at 999. This Court found that, even though H.B. 4156 mandates expulsion only from Oklahoma, rather than from the United States, Oklahoma "cannot . . . be allowed to undermine the long-standing, comprehensive federal framework that defines immigration policy" and that "[s]ensitive matters of immigration policy 'must be made with one voice.'" *See id.* at 999-1002 (citing *United States v. Alabama*, 691 F.3d 1269, 1294 (11th Cir. 2012); *Lozano v. City of Hazleton*, 620 F.3d 170, 179 (3d Cir. 2010), *judgment vacated on other grounds sub nom. City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011); *Biden v. Texas*, 597 U.S. 785, 805-06 (2022); *Arizona*, 567 U.S. at 400).

This Court also found that H.B. 4156 is likely conflict preempted. *See id.* at 1004. This is because H.B. 4156 conflicts with the federal system, where "there are mechanisms . . . that allow unlawfully present noncitizens to remain in the United States—whether in Oklahoma or elsewhere." *Id.* at 1003. Moreover, "H.B. 4156 would grant state officials broad power to unilaterally arrest, prosecute, and punish noncitizens for immigration offenses 'absent any request, approval, or other instruction from the Federal Government[,]'" which "is not the system Congress created[.]" *Id.* at 1004 (citing *Arizona*, 567 U.S. at 408, 410).

6

### B.     H.B. 4156 violates the Commerce Clause.

Because this Court has already found that H.B. 4156 is likely preempted under the Supremacy Clause, it need not address the likelihood of prevailing under the Commerce Clause. *See id.* at 1005 n.9. Nevertheless, H.B. 4156 also violates the Commerce Clause.

The Constitution provides that Congress may "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause also has a dormant component that prevents a State "from retreating into economic isolation" by passing laws that discriminate against interstate commerce. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citation omitted); *see Ore. Waste Sys., Inc. v. Dep't of Env't Quality of Ore.*, 511 U.S. 93, 99 (1994).

"The clearest example of [discriminatory] legislation is a law that overtly blocks the flow of interstate commerce at a State's borders." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935) (states cannot "set a barrier to traffic between one state and another"). The Supreme Court has thus repeatedly invalidated laws that constitute an "attempt by one State to isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade." *See City of Philadelphia*, 437 U.S. at 627-28 (collecting cases).

"[P]recedents firmly establish[] that the federal commerce power surely encompasses the movement in interstate commerce of *persons* as well as commodities." *United States v. Guest*, 383 U.S. 745, 758-59 (1966) (emphasis added). Thus, it is interstate commerce for a person to travel from one state to another. *See Covington & C.*

7

*Bridge Co. v. Commonwealth of Kentucky*, 154 U.S. 204, 218 (1894) (explaining that "to travel in person from Cincinnati to Covington" constitutes interstate commerce); *Hoke v. United States*, 227 U.S. 308, 320 (1913) (similar).

Recognizing that the movement of persons into and out of a state is interstate commerce, the Supreme Court held in *Edwards v. California* that the Commerce Clause was violated where California attempted to "fenc[e] out indigent immigrants"—that is, people seeking to move there from out of state. *City of Philadelphia*, 437 U.S. at 627 (citing *Edwards*, 314 U.S. 160, 173-74 (1941)). There, California "assert[ed] that the huge influx of migrants into California in recent years has resulted in problems of health, morals, and especially finance." *Edwards*, 314 U.S. at 173. California thus contended "that a State may close its borders to the interstate movement of paupers." Respondent's Br., 1941 WL 52964, at *2 (1941). But the Supreme Court concluded that California's statute violated the Commerce Clause's "prohibition against attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders." *Edwards*, 314 U.S. at 173.

So too here. H.B. 4156 "overtly blocks the flow of interstate commerce at a State's borders," *City of Philadelphia*, 437 U.S. at 624, by banning certain noncitizens—namely those who irregularly entered the United States—from the State of Oklahoma. The statute reinforces that ban by forcing any noncitizen convicted of violating the statute to leave the state within three days of their conviction. Because H.B. 4156 discriminates against interstate commerce by banning certain categories of immigrants from entering Oklahoma, H.B. 4156 is "virtually per se invalid" under the Commerce Clause. *Ore.*

8

*Waste Sys., Inc.*, 511 U.S. at 99.

Like California, Oklahoma asserts that problems are caused by migration into the State. *See* H.B. 4156 § 1 (referring to "fentanyl distribution" and other issues).³ Even if there were merit to Oklahoma's concerns, H.B. 4156 is not a constitutional way to address them. Oklahoma cannot penalize crossing state lines or expel people from the State in order "to isolate itself from difficulties common to" the country as a whole. *Edwards*, 314 U.S. at 173.

Because H.B. 4156 discriminates against interstate commerce by banning certain categories of immigrants from entering Oklahoma, H.B. 4156 is "virtually per se invalid" under the Commerce Clause. *Ore. Waste Sys., Inc.*, 511 U.S. at 99.

### III.  Plaintiffs Will Suffer Irreparable Injury Absent an Injunction.

Absent an injunction, the individual plaintiffs and members of Padres Unidos and LULAC OKC will suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under a state statute preempted by federal law. It is well established that

---

³ Oklahoma's attempt to blame these problems on undocumented people is factually baseless. For example, fentanyl overwhelmingly enters the United States through ports of entry, not through irregular migration, and is smuggled by U.S. citizens, not migrants. *See* David Bier, *Fentanyl Is Smuggled for U.S. Citizens by U.S. Citizens, Not Asylum Seekers*, Cato Inst. (Sept. 14, 2022) ("[F]entanyl is smuggled through official crossing points specifically because it is easier to conceal it on a legal traveler or in legal goods than it is to conceal a person crossing the border illegally."), https://perma.cc/8RTW-MENH; *see* U.S. Sent'g Comm'n, *Quick Facts: Fentanyl Trafficking Offenses* (2022), https://perma.cc/XDY9-S49M; Statement of Brian Sulc, Executive Director, Transnational Organized Crime Mission Center, Office of Intelligence and Analysis, Department of Homeland Security (May 18, 2022), https://perma.cc/76WQ-4YTU. In any event, the State cannot demonstrate that H.B. 4156's entry ban serves any "legitimate local purpose" that "cannot be adequately served by reasonable nondiscriminatory alternatives." *Ore. Waste Sys., Inc.*, 511 U.S. at 101.

"the threat of criminal prosecution" under a preempted state law "constitutes irreparable harm for purposes of a preliminary injunction." *Farmworker Ass'n of Fla., Inc. v. Moody*, No. 23-CV-22655, 2024 WL 2310150, at *17 (S.D. Fla. May 22, 2024) (citation omitted); *see also, e.g., GLAHR* 691 F.3d at 1269; *Valle del Sol*, 732 F.3d at 1029; *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1339 (N.D. Ga. 2011); *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008). That harm is exacerbated by the statute's removal provision, which further threatens to banish Plaintiffs and others like them. They would face the trauma of being separated from their families, who would lose needed medical care and financial support, and communities. *See* Boe Decl. ¶¶ 6-9; Coe Decl. ¶¶ 8-10; Padres Unidos Decl. ¶¶ 10-11; LULAC OKC Decl. ¶¶ 13-14.

Preventing people from caring for themselves and their families constitutes irreparable injury. *See Evans v. Utah*, 21 F. Supp. 3d 1192, 1210 (D. Utah 2014). Each threatened injury to Plaintiffs' family unity, health, educational opportunity, and loss of home, standing alone, would warrant a finding of irreparable harm. *See Reiland v. Indep. Sch. Dist. No. 11 of Tulsa Cnty., Oklahoma*, No. 22-CV-484, 2022 WL 20689737, at *4 (N.D. Okla. Nov. 1, 2022) (preventing plaintiff from attending child's school activities constituted irreparable injury); *Brown v. Day*, 434 F. Supp. 2d 1035, 1039 (D. Kan. 2006) (risk of deprivation of basic life necessities constitutes irreparable injury); *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003) (irreparable harm based on the risk of "trauma to already troubled children").

## IV. The Balance of Equities and Public Interest Support an Injunction.

The balance of equities tips decisively in favor of the Plaintiffs, and an injunction is strongly in the public interest. When the Defendants are governmental actors, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). In contrast to the real and severe harms faced by Plaintiffs explained above, this Court found that the State can claim "no harm from the state's nonenforcement of invalid legislation[,]" and "[f]rustration of federal statutes and prerogatives are not in the public interest[.]" *Oklahoma*, 739 F. Supp. 3d at 1007 (citing *Alabama*, 691 F.3d at 1301; *Texas,* 97 F.4th at 296; *South Carolina*, 720 F.3d at 533).

Additionally, H.B. 4156 will erode the public trust that law enforcement has worked to create with immigrant communities that is integral to public safety. Indeed, the Oklahoma Association of Chiefs of Police and Metro Law Enforcement Agency Leaders has stated that H.B. 4156 "places crime victims at risk by increasing the fear of reporting to law enforcement" and threatens to "deteriorate public trust in law enforcement in already vulnerable communities, ultimately resulting in increased public safety concerns."[4] The Association warned that H.B. 4156 will "destroy the connections and relationships we have built within our local immigrant communities and set us back for many years to come." *Id*., *see also Texas*, 2024 WL 861526, at *40 ("Because SB 4 authorizes state police officers to arrest many unauthorized noncitizens, victims of abuse or human trafficking will risk arrest and removal if they report their crimes," making

---

[4] KOKH Staff, *Oklahoma Association of Chiefs of Police Release Joint Statement on HB 4156*, OKC Fox 25 (May 14, 2024), https://perma.cc/PR5E-L4F6.

"noncitizen crime victims less likely to report violent crimes."); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (enjoining public charge rule due to its chilling effect on immigrants seeking services).

To be sure, Oklahoma has concerns about immigration. But under our constitutional structure, that "is not a controversy between equals," *Texas*, 2024 WL 861526, at *40, for "state and local interests are subservient to those of the nation at large" when it comes to the government's sovereign immigration power, *Texas*, 97 F.4th at 296. As this Court held, "Oklahoma may have understandable frustrations with the problems caused by . . . immigration, but the State may not pursue policies that undermine federal law." *Oklahoma*, 739 F. Supp. 3d at 1007 (quoting *Arizona*, 567 U.S. at 416) (internal quotations omitted).

## V. This Court Should Grant an Injunction That Extends to All Members of the Provisional Class or, in the Alternative, a Statewide Injunction.

Plaintiffs have concurrently filed a motion for class certification establishing their compliance with the requirements of Rule 23. Plaintiffs reincorporate those arguments here and request this Court issue provisional class certification. This Court should grant provisional class certification and issue a temporary restraining order and preliminary injunction that protects all members of the provisional class, as courts regularly do in these circumstances, and as two courts that recently considered laws similar to H.B. 4156 have done. *See Idaho*, 2025 WL 1237305, at *1 (granting preliminary injunction and provisionally certifying two classes of Plaintiffs for this purpose); *See* Florida Ord. at 36-37, 47 (same); *see also Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab.*

*Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994) (affirming preliminary injunction to putative class and holding that a class certification was not necessary).

Even without a class, a statewide injunction would still be necessary to protect the Plaintiffs. The Tenth Circuit and other circuit courts have upheld statewide injunctions covering non-parties where an injunction was necessary to ensure complete relief. *See Kansas Health Care*, 31 F.3d at 1538, 1542, 1548 (affirming preliminary injunction applying to all Medicaid-participating nursing homes in Kansas in a case brought by about half of the state's nursing homes); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (issuing statewide injunction where it is "necessary to provide complete relief to the plaintiffs"); *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (relief extends no further than "necessary to redress the plaintiff's injuries") (Gorsuch, J., concurring) (cleaned up). A statewide injunction is necessary to provide complete relief to Plaintiffs in this case. Plaintiff organizations Padres Unidos and LULAC OKC have many individual members across the state who will be affected by H.B. 4156, and there is no easy way of verifying membership during, for example, a traffic stop. *See* Padres Unidos Decl. ¶¶ 7-8; LULAC OKC Decl. ¶ 12; *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996) (granting statewide injunction because a limited injunction, where officers would have to determine plaintiff status or membership on the fly during fast-moving interactions like traffic stops, would be impracticable); *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1362 (N.D. Ga. 2023) (granting statewide injunction because a limited injunction would compromise the plaintiffs' anonymity). Thus, the Court should issue statewide relief.

## VI.     Bond Should Be Waived.

The Court should dispense with any bond requirement in granting Plaintiffs classwide interim relief. The Court of Appeals for the Tenth Circuit "ha[s] held that a trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction . . . ." *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987). This is especially true where, as in this case, a "case seeks to enforce a constitutional right against the government." *Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1061 (D. Colo. 2023), *rev'd on other grounds*, 121 F.4th 96 (10th Cir. 2024).

## CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order or, in the alternative, a preliminary injunction to a provisionally certified class.


Dated: May 13, 2025                                             Respectfully submitted,

/s/ *Devraat Awasthi*

Elissa Stiles (OK Bar. No. 34030)      Devraat Awasthi (OK Bar. No. 35544)
Rivas and Associates                           Megan Lambert (OK Bar. No. 33216)
P.O. Box 470348                                    American Civil Liberties Union of
Tulsa, OK 74147                                    Oklahoma Foundation
T: (918) 419-0166                                  P.O. Box 13327
F: (918) 513-6724                                   Oklahoma City, OK 73113
*estiles@rivasassociates.com*              T: (405) 525-3831
                                                                *mlambert@acluok.org*
                                                                *dawasthi@acluok.org*

| | |
|---|---|
| Spencer Amdur* <br> Oscar Sarabia Roman* <br> Cody Wofsy* <br> American Civil Liberties Union Foundation, Immigrants' Rights Project <br> 425 California Street, 7th Floor <br> San Francisco, CA 94104 <br> T: (415) 343-0770 <br> *samdur@aclu.org* <br> *osarabia@aclu.org* <br> *cwofsy@aclu.org* | Noor Zafar* <br> Omar Jadwat* <br> Grace Choi** <br> American Civil Liberties Union Foundation, Immigrants' Rights Project <br> 125 Broad Street, 18th Floor <br> New York, NY 10004 <br> T: (212) 549-2660 <br> *nzafar@aclu.org* <br> *ojadwat@aclu.org* <br> *gchoi@aclu.org* <br><br> *Attorneys for Plaintiffs* <br> *\* Admitted pro hac vice* <br> *\*\*Pro hac vice application filed* |

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 13, 2025, I filed a true and correct copy of the foregoing using the CM/ECF system, which will serve the filing on all counsel of record.

/s/ *Devraat Awasthi*
Devraat Awasthi
