# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1. PADRES UNIDOS DE TULSA;
2. LEAGUE OF UNITED LATIN AMERICAN CITIZENS OKLAHOMA CITY;
3. BARBARA BOE;
4. CHRISTOPHER COE, on behalf of themselves and all those similarly situated,

    *Plaintiffs*,

v.

1. GENTNER DRUMMOND, in his official capacity as Attorney General of the State of Oklahoma;
2. TIM TIPTON, in his official capacity as Commissioner of Public Safety for the Oklahoma Department of Public Safety;
3. VICKI BEHENNA, in her official capacity as District Attorney of Oklahoma County;
4. STEVE KUNZWEILER, in his official capacity as District Attorney of Tulsa County,

    *Defendants*.

Civil Action 5:24-cv-511-J

## SECOND AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

## INTRODUCTION

1. This action challenges Oklahoma House Bill 4156 ("H.B. 4156"), which purports to give Oklahoma state officials unprecedented power to arrest, detain, and expel noncitizens. Under this novel system, the State of Oklahoma has created its own immigration crimes, completely outside the federal immigration system. State police will arrest noncitizens for these entry and re-entry crimes; state prosecutors will bring charges in state courts; and state judges will issue removal orders requiring people to leave the State. The federal government has no role in, and no control over, Oklahoma's immigration scheme.

2. H.B. 4156 violates the Supremacy Clause of the United States Constitution. Immigration is a quintessentially federal authority. Congress has created a carefully calibrated immigration system, with detailed provisions governing people's entry into the United States and their right to remain here. And Congress placed all the relevant tools and decision-making in the hands of *federal* officials—in keeping with the federal government's exclusive immigration powers and the sensitive foreign policy implications of these powers.

3. H.B. 4156 jettisons this system, grasping control over immigration from the federal government and giving state officers the power to prosecute immigration crimes on their own and banish people from the State. In doing so, H.B. 4156 declares the State off-limits to entire categories of immigrants, most of whom have express federal permission to be in the United States.

4.      H.B. 4156 also violates the Commerce Clause because it impermissibly regulates people's entry into Oklahoma and imposes unacceptable burdens on interstate and foreign commerce.

5.      Plaintiffs hereby file this second amended complaint for declaratory and permanent injunctive relief. Plaintiffs will seek a preliminary injunction to enjoin enforcement of H.B. 4156.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in the Western District of Oklahoma because a substantial portion of the relevant events occurred or will occur in the District and because Defendants reside in the District. 28 U.S.C. § 1391(b).

## PARTIES

8.      Plaintiff Barbara Boe is a 51-year-old Mexican national who lives in Tulsa. She entered the United States without inspection in 2000 and has resided in the country—in Oklahoma—ever since. She travels regularly outside of Oklahoma to visit family in New Jersey and North Carolina.

9.      Plaintiff Christopher Coe is a 37-year-old Mexican national who lives in Broken Arrow with his wife and stepdaughter. He entered the United States without inspection in 2007 and was removed to Mexico several years later. Thereafter, in 2012, he reentered the United States and has resided in the country ever since. He and his wife are in the process of gaining lawful status because his wife was the victim of a crime.

3

10. Plaintiff Padres Unidos de Tulsa ("Padres Unidos") is a membership-based advocacy organization consisting of students, parents, and teachers. It is based in Tulsa, Oklahoma.

11. Padres Unidos's mission is to ensure that Latinx immigrant students and their families can advocate for a quality education for all Tulsa Public School System students. The organization builds advocacy skills and organizes Latinx and immigrant communities to secure meaningful access to the full range of educational services, including mental health resources, meal assistance, special education services, and reading and math achievement.

12. Members of Padres Unidos work collectively to ensure that schools, school boards, and superintendents provide equitable resources to their students and children. The community that Padres Unidos works with will be directly affected by the disruption, uncertainty, and fear created by H.B. 4156, and members of Padres Unidos include individuals who would be subject to prosecution under H.B. 4156.

13. Padres Unidos member Danny Doe is a 47-year-old national of El Salvador who lives in Tulsa with his U.S.-citizen wife and two U.S.-citizen children. He entered the United States without inspection in 2001 and has resided in the country ever since. He has an approved Violence Against Women Act ("VAWA") petition, and is seeking to reopen and dismiss a prior *in absentia* removal order. He travels outside of Oklahoma regularly for family-related travel.

14. Another Padres Unidos member, Mario Moe, is a 39-year-old national of El Salvador. He first entered the United States without inspection in 2001. He received a

4

voluntary departure order in 2007, reentered without inspection in 2008, departed under a removal under in 2013, and reentered without inspection in 2013. He resides with his spouse and his four, minor U.S.-citizen children.

15. Plaintiff League of United Latin American Citizens Oklahoma City ("LULAC OKC") is a council, or chapter, of LULAC, a nationwide, non-profit, non-partisan, membership-based organization founded in 1929. LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights in all aspects.

16. LULAC has over 325,000 members nationwide, including in Oklahoma.

17. LULAC OKC's members include noncitizens who have a variety of immigration statuses. LULAC OKC's members include individuals who would be subject to prosecution under H.B. 4156. They will be directly affected by the disruption, uncertainty, and fear created by H.B. 4156.

18. LULAC OKC member Ronaldo Roe is a Mexican national who entered the United States without inspection in 2007. He has lived in Oklahoma since then. He regularly travels throughout Oklahoma for work and occasionally travels out of state for personal reasons, including recently to attend a wedding in Florida.

19. Another LULAC OKC member, Soto Soe, entered the United States without inspection in 2002. He received a voluntary departure order in 2008. He re-entered the United States without inspection in 2009, and resided in the country until 2014 when he received another voluntary departure order. After attempting to enter the United States again in 2014, he was stopped at the border and issued a removal order. He last re-entered

the United States in 2015. Both his wife and child are U.S. citizens. He has a pending application for lawful permanent residence under the Violence Against Women Act.

20. Defendant Gentner Drummond is the Attorney General of the State of Oklahoma. He is the "chief law officer of the state" and has the duty to "appear for the state" and "prosecute . . . criminal" actions in state and federal courts, including actions to enforce H.B. 4156. Okla. Stat. tit. 74 §§ 18, 18b. He is sued in his official capacity.

21. Defendant Drummond urged legislators to pass H.B. 4156 and was involved in drafting portions of the bill. He has publicly stated his strong support for the law, applauding legislators for taking "swift action in making the bill a reality." Defendant Drummond also stated that H.B. 4156 is required due to "the consequences of the Biden Administration's utter failure to secure our nation's border."

22. Defendant Tim Tipton is the Commissioner of Public Safety for the Oklahoma Department of Public Safety ("DPS"). Among other duties, he has the "right and power . . . to enforce the criminal laws of the state," including H.B. 4156. Okla. Stat. tit. 47 § 2-117. He is sued in his official capacity.

23. Defendant Vicki Behenna is the District Attorney of Oklahoma County. Defendant Behenna has the duty to "diligently prosecute any violations" of state criminal laws in the county, including H.B. 4156. Okla. Stat. tit. 21 § 21-1305. She is sued in her official capacity.

24. Defendant Steve Kunzweiler is the District Attorney of Tulsa County. Defendant Kunzweiler has the duty to "diligently prosecute any violations" of state criminal laws in the county, including H.B. 4156. Okla. Stat. tit. 21 § 1305. He is sued in

6

his official capacity.

## STATEMENT OF FACTS

### A. Legal Background: Comprehensive Federal Immigration System

25. The federal government has exclusive power over immigration. *See, e.g., Arizona v. United States*, 567 U.S. 387, 394-95 (2012).

26. Congress has created a comprehensive system of federal laws regulating immigration in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101 et seq.

27. Federal immigration statutes and the associated implementing regulations and precedential administrative law decisions form an exceptionally detailed, complex, and finely reticulated regulatory regime. Congress has frequently amended the relevant provisions of the INA, including by passing particularly significant legislation in 1952, 1965, 1980, 1986, 1990, 1996, 2000, 2001, 2005, and 2008, along with dozens of other Acts modifying the immigration regime in countless ways. Immigration legislation is proposed in every single Congress and frequently forms a point of major national debate.

28. The INA contains complex and exclusive procedures for determining immigration and citizenship status and for determining whether an individual may lawfully remain in the United States, either temporarily or permanently. *See, e.g.*, 8 U.S.C. § 1229a(a)(3). Under federal law, there is no single, readily ascertainable category or characteristic that establishes whether a particular person may or may not be permitted to remain in the United States. The answer to that question can only be reached through the processes outlined in the INA and may depend on the discretionary determinations of federal officials.

29. Many people who enter the United States without inspection ultimately obtain federal authorization to remain in the United States temporarily, indefinitely, or permanently.

30. Congress has established that entry into the United States is a crime under certain circumstances. 8 U.S.C. § 1325 ("Improper Entry by Alien") provides criminal penalties for noncitizens who, inter alia, enter the United States at any time or place other than as designated by immigration officers. 8 U.S.C. § 1326 provides criminal penalties for noncitizens who reenter the United States without authorization after entry of an order of removal.

31. Congress also created specific procedures to remove individuals from the United States. These are generally called removal proceedings and can take multiple forms. *See, e.g.*, 8 U.S.C. § 1229a (full removal proceedings); 8 U.S.C. § 1225 (expedited removal proceedings); 8 U.S.C. § 1231(a)(5) (reinstatement of removal proceedings). Under federal law, people are allowed to remain in the United States while administrative removal proceedings prescribed by the INA are pending.

32. Prosecution for the federal entry and reentry crimes and the decision whether to pursue the removal of a given person from the country, and through what mechanism, are matters of federal discretion. Federal agents and policymakers may choose to deploy these tools—or not—for a wide range of reasons, including national priorities, migration patterns, international relationships, and humanitarian concerns.

**B.  H.B. 4156**

33. On April 30, 2024, Governor Stitt signed H.B. 4156 into law.

34. H.B. 4156 creates two new state law offenses: "State Illegal Entry" and "State Illegal Reentry." H.B. 4156 §§ 2(B), (D) (codified at Okla. Stat. tit. 21, § 1795(B), (D)).

35. Each of these offenses can only be committed by an "alien," meaning any person who is not a citizen or national of the United States. H.B. 4156 § 2(A) (codified at Okla. Stat. tit. 21, § 1795(A)).

36. A noncitizen commits an "impermissible occupation" ("State Illegal Entry") if they "willfully and without permission enter[] and remain[] in the State of Oklahoma without having first obtained legal authorization to enter the United States." H.B. 4156 § 2(B) (codified at Okla. Stat. tit. 21, § 1795(B)).

37. "[A]ffirmative defense[s] to prosecution" for State Illegal Entry exist when a noncitizen has been granted "lawful presence" or "asylum" by the federal government, or if they have been approved for benefits under the federal Deferred Action for Childhood Arrivals (DACA) program. H.B. 4156 § 2(F) (codified at Okla. Stat. tit. 21, § 1795(F)). The statute does not define "lawful presence."

38. H.B. 4156 does not provide a defense for people currently seeking asylum, other humanitarian protection, or any other relief available under federal law.

39. A first violation of State Illegal Entry is a misdemeanor punishable by up to a year in county jail. Any subsequent violation is a felony punishable by up to two years in state prison. H.B. 4156 §§ 2(C)(1)-(2) (codified at Okla. Stat. tit. 21, § 1795(C)(1)- (2)).

40. H.B. 4156 also creates a crime of State Illegal Reentry. This provision makes it a crime if a noncitizen "enters, attempts to enter, or is at any time found in Oklahoma" after

9

they have been "denied admission, excluded, deported, or removed, or ha[ve] departed the United States while an order of exclusion, deportation, or removal is outstanding." H.B. 4156 § 2(D) (codified at Okla. Stat. tit. 21, § 1795(D)).

41. A noncitizen is not subject to the State Illegal Reentry provision if (1) the U.S. Attorney General "expressly consented to [their] reapplying for admission" prior to their reentry, or (2) they were "not required to obtain such advance consent under this section or any prior statute." H.B. 4156 §§ 2(D)(1)-(2) (codified at Okla. Stat. tit. 21, § 1795(D)(1)-(2)).

42. A violation of State Illegal Reentry is punishable by up to two years in prison. H.B. 4156 § 2(D) (codified at Okla. Stat. tit. 21, § 1795(D)).

43. Noncitizens convicted of State Illegal Entry or State Illegal Reentry "shall be required to leave [Oklahoma] within seventy-two (72) hours following [their] conviction or release from custody, whichever comes first." H.B. 4156 §§ 2(C)(1)-(2); 2(D) (codified at Okla. Stat. tit. 21, § 1795(C)(1)-(2); (D)).

44. Noncitizens charged with or convicted of State Illegal Entry or State Illegal Reentry are not eligible for probation, delayed sentencing, or community sentencing. H.B. 4156 § 2(G); § 3 (codified at Okla. Stat. tit. 21, § 1795(G); Okla. Stat. tit. 22 § 988.25).

45. H.B. 4156 applies statewide, without any exception.

### C. The Effect of H.B. 4156 on Plaintiffs

46. H.B. 4156 creates a new state system to regulate immigration that completely bypasses and conflicts with the federal system. It allows state officers to arrest, detain, and expel from Oklahoma noncitizens who are convicted of the new state crimes—all without

any direction, input, or involvement whatsoever from federal officials.

47.     H.B. 4156 requires state officers to make determinations of federal immigration status and to incarcerate noncitizens pursuant to these determinations. The law does not make any exceptions for people in the process of seeking or obtaining federal immigration status.

48.     H.B. 4156 will uproot and expel thousands of immigrants from Oklahoma, including asylum seekers and immigrants applying for other federal immigration benefits and status. By subjecting these categories of immigrants to criminal punishment and a mandate to leave the State, H.B. 4156 effectively banishes large categories of immigrants who are entitled to remain in the United States while their cases are pending, and whom the federal government may eventually grant lawful status, permanent residence, and citizenship.

49.     The Oklahoma Association of Chiefs of Police and Metro Law Enforcement Agency leaders have said that H.B. 4156 raises racial profiling concerns and "may deteriorate public trust in law enforcement in already vulnerable communities."

50.     The harms of H.B. 4156 will be felt acutely by Plaintiffs in this case.

51.     Plaintiff Barbara Boe is a member of the LGBTQ community and came to the United States to escape the oppression, discrimination, and abuse she was experiencing in Mexico on account of her sexual orientation. She fears having to leave Oklahoma, which has been her home for over twenty years, and being forced to return to Mexico, where gay people suffer harm.

52.     Plaintiff Christopher Coe is the sole provider and protector of his wife and

child. Being detained, arrested, and removed under H.B. 4156 would be extremely disruptive to his family and would devastate their well-being.

53.     The harms of H.B. 4156 will also be felt acutely by Padres Unidos and LULAC OKC, whose membership includes individuals who would be subject to prosecution, imprisonment, and removal from the state under the law.

54.     Padres Unidos member Danny Doe fears being separated from his family. He is the primary financial provider for his family. One of his sons is already seeing a counselor due to his sadness and anxiety from worrying about his dad's immigration status.

55.     Padres Unidos member Mario Moe fears being separated from his family, especially because he has a U.S.-citizen child with a serious medical condition.

56.     LULAC OKC member Ronaldo Roe fears being arrested and removed under H.B. 4156. That would prevent him from continuing his critical caregiving responsibilities for his brother, who requires daily dialysis, and his parents and two nephews, for whom he is a legal guardian.

57.     LULAC OKC member Soto Soe fears being arrested and removed under H.B. 4156 because he will not be able to provide for his U.S.-citizen son.

## CLASS ACTION ALLEGATIONS

58.     Padres Unidos, LULAC OKC, and the Individual Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and two classes of other persons similarly situated.

59.     Padres Unidos, LULAC OKC, and the Individual Plaintiffs seek to represent the following two classes: (1) The Entry Class: All noncitizens who may now or in the

future enter the state of Oklahoma without having obtained the legal authorization to enter the United States; and (2) The Reentry Class: All noncitizens who may now or in the future enter, attempt to enter, or be at any time found in the state of Oklahoma after they have been denied admission to or excluded, deported, or removed from the United States; or have departed from the United States while an order of exclusion, deportation, or removal was outstanding.

60.     The proposed classes satisfy the requirements of Rule 23(a)(1) because each respective class is so numerous that joinder of all members is impracticable. Hundreds if not thousands of noncitizens will be subjected to arrest, detention, prosecution and banishment from Oklahoma under H.B. 4156 and its implementation by Defendants. The proposed classes also include numerous future noncitizens who will enter Oklahoma and will be subjected to H.B. 4156.

61.     The classes satisfy the commonality requirements of Rule 23(a)(2). The members of the respective classes are subject to a common practice: arrest, detention, prosecution, and banishment from Oklahoma under H.B. 4156 contrary to the Supremacy Clause and the Commerce Clause. The suit also raises questions of law common to members of the proposed classes, including whether H.B. 4156 and its implementation violate the Supremacy Clause and Commerce Clause.

62.     The proposed classes satisfy the typicality requirements of Rule 23(a)(3), because the claims of the representative Individual Plaintiffs are typical of the claims of their respective classes. Additionally, Padres Unidos and LULAC OKC represent the claims of their respective members, and those members' claims are typical of the claims of

13

the classes. Each proposed class member, including the representative Individual Plaintiffs and Padres Unidos and LULAC OKC members, will experience or face the same principal injury (arrest, detention, prosecution, and banishment), based on the same government practice (H.B. 4156 and its implementation), which is unlawful as to the respective classes because it violates the Supremacy Clause and Commerce Clause.

63. The proposed classes satisfy the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as the other members of their respective classes— among other things, an order declaring H.B. 4156 unlawful and an injunction preventing its enforcement. In defending their rights and the rights of their members, the representative Plaintiffs will defend the rights of all proposed class members in their respective classes fairly and adequately.

64. The proposed classes are represented by experienced attorneys from the American Civil Liberties Union Foundation Immigrants' Rights Project and the American Civil Liberties Union Foundation of Oklahoma. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens, including cases asserting claims very similar claims to those asserted here.

65. The proposed classes also satisfy Rule 23(b)(2). Defendants will act on grounds generally applicable to the classes by subjecting them to arrest, detention, and prosecution under H.B. 4156. Injunctive and declaratory relief is therefore appropriate with respect to the respective classes as a whole.

## CLAIMS FOR RELIEF

### Count One: Preemption; Equity

66. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

67. The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

68. Federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

69. H.B. 4156 violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority.

70. H.B. 4156 further violates the Supremacy Clause because it conflicts with federal laws, contradicts federal admission and release decisions, imposes burdens and penalties not authorized by and contrary to federal law, creates its own immigration classifications, and directs state officers to take unilateral immigration enforcement actions.

71. Plaintiffs may sue to obtain injunctive relief against H.B. 4156 in equity.

### Count Two: Commerce Clause; Equity; 42 U.S.C. § 1983

72. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

73. The Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause not only gives Congress this power, but also bars states from interfering with Congress's regulation of interstate commerce.

74. H.B. 4156 violates the Commerce Clause because it impermissibly regulates people's entry into Oklahoma and their movement across state and national borders. It therefore imposes unacceptable burdens on interstate and foreign commerce.

75. Plaintiffs may sue to obtain injunctive relief against H.B. 4156 in equity and under § 1983.

**Count Three: Eighth and Fourteenth Amendments to the U.S. Constitution; Equity; 42 U.S.C. § 1983**

76. Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

77. The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments." The Eighth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

78. Under H.B. 4156, state officers have the authority to imprison individuals who are found in violation of the offenses set forth in H.B. 4156.

79. H.B. 4156 violates the Eighth Amendment because it requires noncitizens convicted of state illegal entry or state illegal reentry to leave the State within seventy-two hours of their conviction or release from custody. This effectively results in their banishment from the State and constitutes cruel and unusual punishment.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a. Declare that H.B. 4156 is unlawful in its entirety;

b. Preliminarily and permanently enjoin Defendants from enforcing H.B. 4156;

c. Grant Plaintiffs' cost of suit, reasonable attorneys' fees, and other expenses pursuant to 28 U.S.C. § 1988; and

d. Grant any other and further relief that this Court may deem fit and proper.

Dated: May 13, 2025

Respectfully submitted,

/s/ *Devraat Awasthi*

Elissa Stiles (OK Bar. No. 34030)
Rivas and Associates
P.O. Box 470348
Tulsa, OK 74147
T: (918) 419-0166
F: (918) 513-6724
*estiles@rivasassociates.com*

Devraat Awasthi (OK Bar. No. 35544)
Megan Lambert (OK Bar. No. 33216)
American Civil Liberties Union of Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
T: (405) 525-3831
*mlambert@acluok.org*
*dawasthi@acluok.org*

Spencer Amdur*
Oscar Sarabia Roman*
Cody Wofsy*
American Civil Liberties Union Foundation, Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
*samdur@aclu.org*
*osarabia@aclu.org*
*cwofsy@aclu.org*

Noor Zafar*
Omar Jadwat*
Grace Choi**
American Civil Liberties Union Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
*nzafar@aclu.org*
*ojadwat@aclu.org*
*gchoi@aclu.org*

*Attorneys for Plaintiffs*
*\* Pro hac vice*
*\*\*Pro hac vice application filed*