## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PADRES UNIDOS DE TULSA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, *et al.,*<br><br>*Defendants*. | Case No. 5:24-cv-511-J |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
## A TEMPORARY RESTRAINING ORDER
## OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION[1]

H.B. 4156 was unconstitutional when this Court enjoined it last year, and it is unconstitutional today. None of the intervening developments that Defendants cite alter this conclusion. Changes in Executive branch policies are irrelevant to the preemption analysis, as it is *Congress's* actions and purpose that dictate the inquiry. And this Court—along with every other court to address these issues—has already rejected Defendants' remaining merits arguments and found that H.B. 4156 is likely both field and conflict preempted. *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1002, 1004, 1007 (W.D. Okla. 2024). Defendants' threshold arguments fare no better. Plaintiffs have standing to

---

[1] Plaintiffs respectfully request the Court's leave to file an overlength reply, *see* LR 7.1(h), in response to Defendants' overlength response, *see* LR 7.1(e); Opp. 24 n.6. Plaintiffs were not able to seek advance leave before the 5 PM deadline set by the Court this morning, nor obtain opposing counsel's position.

challenge H.B. 4156 because they and their members are engaged in conduct arguably proscribed by the law. Nor does their federal immigration status, or lack thereof, have any bearing on their ability to challenge a preempted state law under which they could be arrested, imprisoned, and banished from the State of Oklahoma. Plaintiffs also have a well-established cause of action in equity to seek relief from the enforcement of an unconstitutional law.

Finally, Defendants do not contest that Plaintiffs face danger of physical harm and could be subject to retaliation if they are unable to proceed anonymously. And their arguments against provisional class certification are meritless and contradicted by their own statements. This Court should provisionally certify the class, permit Plaintiffs to proceed under pseudonyms, and grant a temporary restraining order, or, in the alternative, a preliminary injunction.

## ARGUMENT

### I. Plaintiffs Have Standing And Their Claims Are Justiciable.

The Individual Plaintiffs and LULAC OKC and Padres Unidos members are noncitizens who have "enter[ed] and remain[ed] in the State of Oklahoma without having first obtained legal authorization to enter the United States[,]" H.B. 4156 § 2(B), or are "found in Oklahoma" after they have been "denied admission, excluded, deported, or removed" from the United States. *Id.* § 2(D). They are not eligible for any of the affirmative defenses to prosecution under the Entry Provision, *see id*. § 2(F), or subject to any exceptions to the Reentry Provision, *see id*. § 2(D); *see also* Boe Decl. ¶¶ 2, 5; Coe Decl.

¶¶ 5–7; Lara Decl. ¶ 10, 11; Maldonado Decl. ¶ 13, 14.[2] Plaintiffs thus have standing because they have engaged in conduct that is "arguably proscribed by the statute they wish to challenge," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up), and are "among the direct targets of" H.B. 4156, *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006). They have established a credible threat of prosecution under a statute that "on its face" applies to them. *Frank v. Lee*, 84 F.4th 1119, 1134 (10th Cir. 2023); *see also United States v. Iowa*, 737 F. Supp. 3d 725, 740-45 (S.D. Iowa 2024); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *2–8 (D. Idaho Apr. 29, 2025) [hereinafter "*Idaho*"] (same); Omnibus Ord. at 5-12, *Fla. Immigrant Coal. v. Uthmeier*, No. 1:25-cv-21524-KMW (S.D. Fla. Apr. 29, 2025), ECF No. 67 [hereinafter "*Florida*"] (same). Contrary to Oklahoma's suggestion, *Murthy v. Missouri*, 603 U.S. 43 (2024), and *All. for Hippocratic Med.*, 602 U.S. at 367, do not change the Court's standing analysis here. *Cf.* Opp. 7–9. Both cases involved "speculation" about how the actions of third parties not before the court would impact plaintiffs' standing. *See All. for Hippocratic Med.*, 602 U.S. at 383; *Murthy*, 603 U.S. at 69. By contrast, Plaintiffs are the direct targets of the challenged regulation.

Next, Oklahoma argues at length that Plaintiffs cannot have standing to challenge H.B. 4156 because they are "in Oklahoma unlawfully under federal law" and therefore

---

[2] Oklahoma seems to challenge the organizations' "direct standing," Opp. 16, but LULAC OKC and Padres Unidos only assert standing on behalf of their members (i.e. associational standing), not organizational standing based on their own injuries. The Supreme Court's decision in *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), is thus inapplicable.

have no "legally protected" interest in this case. Opp. 9, 11. This is a non-sequitur. Plaintiffs have a significant legally protected interest in not being arrested, imprisoned, and banished from the State of Oklahoma by a state entity that lacks the constitutional power to engage in such action against them. *See Murphy v. NCAA*, 584 U.S. 453, 479 (2018) (explaining that preemption represents a legally protected "federal right to be free from" impermissible state regulation). Even if Individual Plaintiffs were "unlawfully" in the country under federal law, Opp. 11—and most are not—that would not defeat their standing to challenge a *state* prosecution under a law that is preempted. *See* Coe Decl. ¶ 7 ("in the process of gaining [ ] lawful status"); Lara Decl. ¶ 11 (member Mario Moe has "pending U visa" application); Maldonado Decl. ¶ 14 (member Soto Soe "has a pending application for lawful permanent residence under the Violence Against Women Act"). Indeed, Oklahoma's sweeping theory would eliminate standing in any case that challenges parallel state prosecutions. *Cf. Hines v. Davidowitz*, 312 U.S. 52 (1941) (allowing suit by private plaintiff alleging that state noncitizen registration law was preempted by federal scheme); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (finding individual had standing to challenge preempted state law criminalizing transporting and harboring of undocumented individuals); *Farmers Villas at Parkside Partners v. City of Farmers Branch, Tex*., 726 F.3d 524, 529 (5th Cir. 2013) (similar). Courts across the country have uniformly rejected similar arguments. *See Iowa*, 737 F. Supp. 3d at 740–45 (similarly situated plaintiffs have standing); *Idaho*, 2025 WL 1237305, at *2–8 (same); *Florida*, No. 1:25-cv-21524-KMW (S.D. Fla. Apr. 29, 2025), ECF No. 67 at 5–12 (same).

Finally, Defendants assert in a footnote that Plaintiffs lack a cause of action. Opp. 11 n.4. "Arguments raised in a perfunctory manner, such as in a footnote, are waived." *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc). Even assuming otherwise, this case is a paradigmatic application of *Ex parte Young*, 209 U.S. 123 (1908): the individual plaintiffs and members of LULAC OKC and Padres Unidos face prosecution under a preempted state statute, and they seek prospective relief against state officers—Defendants—charged with enforcing the law. *See also Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (holding that plaintiffs satisfied *Ex parte Young* in pre-enforcement preemption suit challenging state law regulating noncitizen employment); *United States v. Texas*, 97 F.4th 268, 309–10 (Oldham, J., dissenting) (recognizing suit in equity under *Ex parte Young* for those "directly affected by the regulations they sought to enjoin"); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 906 n.19 (10th Cir. 2017) (same).[3]

## II.    H.B. 4156 Is Preempted Regardless Of Any Change In Executive Branch Policy.

Oklahoma's merits arguments rest almost entirely on a change in the Executive's policies with respect to immigration. Opp. 2–3, 12–16. But this is simply irrelevant to the Court's preemption analysis, and even Defendants acknowledge that "it is possible these developments are not enough to salvage Oklahoma's law." Opp. 3. The application of the Supremacy Clause turns on the intent of Congress—not the Executive. *See Wyeth v. Levine*,

---

[3] In addition, Plaintiffs' interstate commerce claim can be brought under 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439, 446, 451 (1991).

555 U.S. 555, 565 (2009) ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (emphasis added) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))); *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1021 (10th Cir. 2022) ("The Supremacy Clause of the United States Constitution grants *Congress* the authority to preempt state law." (emphasis added)). The withdrawal of the United States from this case does not change the conclusion, required by longstanding precedent, that H.B. 4156 is preempted, because it does not remove the overwhelmingly dominant federal interest, or the pervasive scheme of regulation that Congress has enacted. *See Idaho*, 2025 WL 1237305 (enjoining similar law after United States withdrew its challenge in Oklahoma); *Florida*, No. 1:25-cv-21524-KMW (S.D. Fla. Apr. 29, 2025), ECF No. 67 (same).

Nor do any Executive Branch policy changes make this case "more like *Kansas* [*v. Garcia*, 589 U.S. 191 (2020)]." Opp. 14. As this Court recognized, *Kansas* involved prosecutions under a state identity fraud statute "that ha[d] no connection with immigration law." *Oklahoma*, 739 F. Supp. 3d at 1001 (quoting *Kansas*, 589 U.S at 209). Here, "H.B. 4156 touches so deliberately on matters of immigration regulation," *id.*, and displaces the carefully balanced statutory regime of federal control over the immigration system. Defendants speculate that the Executive is "now undaunted by Mexico's supposed H.B. 4156 concerns," Opp. 14, but whether or not that is true, it is irrelevant, because *Congress* is the one who has enacted a pervasive scheme that leaves no room for states to supplement, and *Congress* is the one who chose to place enforcement decisions in the hands of federal officers so that they would be "made with one voice." *Arizona*, 567 U.S. at 409; *see also Biden v. Texas*, 597 U.S. 785, 805-06 (2022).

6

With respect to Oklahoma's argument that H.B. 4156 is permitted under the State War Clause, what this Court concluded last summer remains true today: "[n]either the Supreme Court nor the Tenth Circuit has recognized" this sweeping argument. *Oklahoma*, 739 F. Supp. 3d, at 1004–05; *id*. at 1005 (citing cases that have "rejected application of the State War Clause in the context of immigration"). Indeed, *no* court has accepted this breathtaking assertion of state supremacy, which would give states a blank check to disregard Congress and federal authority and unilaterally "enact and enforce state legislation regulating immigration otherwise preempted by federal law." *Texas*, 97 F.4th at 295; *id*. (rejecting Texas's invasion defense and explaining "that federal statutes addressing matters such as noncitizen entry and removal are still supreme even when the State War Clause has been triggered"); *see also Padavan v. United States*, 82 F.3d 23, 28 (2d Cir. 1996) ("In order for a state to be afforded the protections of the Invasion Clause, it must be exposed to armed hostility from another political entity…"). While Oklahoma is free to address crimes committed by "cartel members" and "crime syndicates" through its ordinary criminal laws, it cannot regulate entry and presence. Opp. 21. And federal immigration laws already specifically address the type of criminal conduct Oklahoma mentions— reinforcing that Congress has exhaustively regulated this field. *See*, *e.g*., 8 U.S.C. §§ 1182(a)(2)(C) (grounds of inadmissibility and removability for drug trafficking); 1182(a)(2)(H) (human trafficking); 1182(a)(3) (security and terrorism).

Finally, Defendants suggest that H.B. 4156 is not preempted because "an illegal alien who is excluded from Oklahoma will have other states to rely on." Opp. 16. As an initial matter, the fact that H.B. 4156's substantive crimes regulate entry and reentry is by

itself enough to render the law preempted. If those provisions are enjoined, the remaining provisions must fall because they have no independent effect. Further, this Court and others have correctly rejected Defendants' argument, and they provide no basis for reconsideration other than their disagreement with the Court's conclusion. *See* Opp. 19–20; *see also United States v. Alabama,* 691 F.3d, 1269, 1293–95 (11th Cir. 2012) (invalidating similar attempt to expel a category of immigrants from a state, because states cannot "unilaterally determine that an[] alien unlawfully present in the United States cannot live within the state's territory"); *Lozano v. City of Hazleton*, 724 F.3d 297, 315–18 (3d Cir. 2013) (municipal housing regulations were preempted "interference with the federal removal process" even though they did not "control actual, physical entry into, or expulsion from [the City] or the United States"). Defendants also attempt to rewrite H.B. 4156 by suggesting, for the first time in this litigation, that someone who has been granted "discretionary relief once prosecution has begun" is "seemingly, by definition, lawfully present in the United States" and therefore not subject to the law. Opp. 16. But regardless of any last-ditch attempts by Oklahoma to save the statute, the Court must look to the plain text of the statute, and "[t]he plain text [of H.B. 4156] has no exceptions" that are applicable to Plaintiffs or that track federal law. *United States v. Iowa*, 126 F.4th 1334, 1347 (8th Cir. 2025), *vacated on other grounds,* No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025). And "even if" H.B. 4156 "had the same exceptions as federal law, the state law still conflicts with federal law because it creates a parallel scheme of enforcement for immigration law." *Id.* at 1348.

### III.    H.B. 4156 Violates The Commerce Clause.

Oklahoma's Commerce Clause arguments are likewise unavailing. *Edwards v. California* established that attempts to exclude people at a state's borders violate the Commerce Clause. 314 U.S. 160, 173 (1941); TRO Mot. 8. Defendants contend that *Edwards* is distinguishable because it involved a United States citizen, who has the right to travel throughout the country. Opp. 19. But, even assuming the right to travel is so limited, *Edwards* did not rely on the right to travel in invalidating the statute; rather, it relied on the Commerce Clause, which applies to citizens and noncitizens alike. *Edwards*, 314 U.S. at 172–74.[4]

Nor are Commerce Clause claims limited to "trade," as Defendants seem to suggest. Opp. 17–18. Courts have been clear that the movement of people from one state to another constitutes interstate commerce. *See Covington & C. Bridge Co. v. Kentucky*, 154 U.S. 204, 218 (1894) ("to travel in person from Cincinnati to Covington" constitutes interstate commerce); *Hoke v. United States*, 227 U.S. 308, 320 (1913) ("a person may move or be moved in interstate commerce"); *United States v. Guest*, 383 U.S. 745, 758–59 (1966) ("[P]recedents firmly establish[] that the federal commerce power surely encompasses the movement in interstate commerce of persons"). Because H.B. 4156 "overtly blocks the flow of interstate commerce at a State's borders," it is "the clearest example of legislation" that discriminates against interstate commerce. *City of Philadelphia v. New Jersey*, 437

---

[4] Some concurring justices would have relied upon the right to travel in invalidating the statute. *Edwards*, 314 U.S. at 178 (Douglas, J., concurring); *id*. at 182 (Jackson, J., concurring). But the majority relied upon the Commerce Clause. *Id*. at 172–74.

U.S. 617, 624 (1978); *see also Edwards*, 314 U.S. at 173; *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935). Thus, H.B. 4156 is unconstitutional under the Commerce Clause.[5]

## IV.    Plaintiffs Should be Allowed to Proceed Under Pseudonyms.

Defendants do not contest that Plaintiffs' immigration status is highly sensitive and personal, and that they reasonably fear physical harm from both the federal government and private actors as a result of their involvement in this case. Opp. 22–24. Instead, they dismiss as "hyperbol[e]" the very real threat of retaliation that even they acknowledge Plaintiffs face. Opp. 24. The Court should exercise its discretion to permit Plaintiffs to proceed under pseudonyms.

Leave to proceed under pseudonyms is a matter of "informed discretion" for the *district* court. *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (quoting *James v. Jacobson*, 5 F.3d 233, 242 (4th Cir. 1993)). Oklahoma suggests that "the Tenth Circuit has denied nearly all opposed requests to proceed anonymously," Opp. 23, but the cases they cite are off the mark. None involved the confluence of serious harms that Plaintiffs face here, including the disclosure of sensitive information regarding their immigration status,

---

[5] Defendants additionally contend that, because unlawful entry is a crime under federal law, there is no dormant Foreign Commerce Clause violation. Opp. 18–19. But even if this argument applied to Plaintiffs' interstate commerce claim, "Congress must manifest its unambiguous intent before a federal statute will be read to permit or to approve such a violation of the Commerce Clause as Oklahoma here seeks to justify." *Wyoming v. Oklahoma*, 502 U.S. 437, 458 (1992). Congress has instead evinced its intent to preclude laws such as H.B. 4156 by crafting a comprehensive framework of laws regulating entry into the United States. *Oklahoma*, 739 F. Supp. 3d at 997–1002.

the threat of physical harm by private actors, or retaliatory criminal prosecution and deportation by the federal government.

Defendants acknowledge that Plaintiffs may face retaliation from the federal government for participating in this case. Opp. 24. Immigration enforcement action that targets Plaintiffs *because of* their participation in this case is hardly "everyday enforcement of the country's immigration laws." *Id*. It is precisely the type of retaliatory conduct that pseudonymity was designed to protect against. *D.B.U. v. Trump*, No. 1:25-CV-01163-CNS, 2025 WL 1101149, at *1 (D. Colo. Apr. 14, 2025); *Doe v. U.S. Imm. & Customs Enforcement*, No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461 at *3 (D.N.M. Oct. 3, 2024); *Doe v. Hobson*, 300 F.R.D. 576, 577 (M.D. Ala. 2014). Defendants do not respond at all to Plaintiffs' fear of retaliation from private actors who may violently target them for their immigration status and advocacy in court. ECF No. 62, at 6. And they ignore what is individually at stake for Barbara Boe and Christopher Coe: Boe is a member of the LGBT+ community and has built a life here in Tulsa free from the discrimination she fled in Mexico; Christopher Coe and his wife are seeking status because his wife was the victim of a crime, and he and his family fear retaliation should people find out about their cooperation with law enforcement. Boe Decl. ¶¶ 6, 8; Coe Decl. ¶¶ 7, 14. These private interests and threats of physical harm are significant factors in the Tenth Circuit's analytical framework. Defendants categorically fail to address them. Any of these factors by itself would favor anonymity, but together the need for anonymity is overwhelming.

## V.    This Court Should Provisionally Certify A Class.

Class certification is proper because the "entry" and "reentry" classes satisfy the Rule 23 requirements, and because a trial court has broad discretion to grant class certification, including provisional certification. *See Florida*, No. 1:25-cv-21524-KMW (S.D. Fla. Apr. 29, 2025), ECF No. 67 at 28–37 (provisionally certifying nearly identical "entry" and "reentry" classes in a challenge against a nearly identical state law); *Idaho*, 2025 WL 1237305, at *15–20 (same). Defendants' arguments against class certification fail.

First, they contend that class certification is inappropriate because Plaintiffs lack standing. Opp. 25. But Plaintiffs plainly have standing to bring this action, as explained above. *Supra* at Section I.

Defendants next assert that Plaintiffs do not satisfy the numerosity requirement because their class definition based on "noncitizens" amounts to "speculation." Opp. 25–26. As an initial matter, the estimate that Plaintiffs provide, *see* Mot. for Class Cert. 6–7, ECF No. 61 ("thousands of individuals . . . who are at risk of enforcement under H.B. 4156" and up to "90,000[,]" the number of undocumented immigrants in Oklahoma), is not speculative. Indeed, Defendants themselves acknowledge that "over 100,000 people live in Oklahoma illegally," Opp. 29 (citing testimony from Oklahoma Attorney General), and even is if only a subset of this group is subject to H.B. 4156, that is more than enough to satisfy numerosity. *See Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) ("[T]he numerosity requirement is not a question of numbers. Rather, courts must consider factors that enter into the joinder impracticability issue.")

(cleaned up); *see also Barton v. Corr. Corp. of Am.*, No. 03-cv-428-JHP-SAJ, 2005 WL 5329514, at *3 (N.D. Okla. Sept. 1, 2005) (certifying class of 66 members); *Fabian v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.*, 409 F. Supp. 94, 95 (W.D. Okla. 1976) (certifying class of 142).

Third, Defendants' challenges to commonality and typicality also fail. Opp. 26. The resolution of class claims here "depend[s] on a common contention . . . that is capable of class wide resolution[,]" namely whether H.B. 4156's Entry and Reentry provisions are preempted. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Hill v. Marathon Oil Co.*, No. CIV-08-37-R, 2010 WL 2365447, at *2 (W.D. Okla. June 9, 2010) ("There need only be one issue of law or fact common to all class members to satisfy the element of commonality."). Defendants have no response to this, other than to once again reiterate their arguments on standing. Opp. 26, 27. And typicality is not defeated just because some LULAC OKC and Padres Unidos members may have available affirmative defenses. Opp. 27. The members they have identified, and Individual Plaintiffs Boe and Coe, challenge H.B. 4156 on the same legal grounds as all class members, and seek the exact same relief: an injunction barring H.B. 4156's enforcement. That some non-class members of the organizations have different backgrounds or immigration histories does not defeat typicality. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d, 1188, 1197 (10th Cir. 2010) ("[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances.").

Fourth, Defendants contest the adequacy of class representatives because certifying a class "likely risks bringing law enforcement . . . attention on the rest of the class members." Opp. 27. Defendants do not explain how certifying a class would result in increased law enforcement scrutiny of the hundreds and thousands of unnamed class members. And in any case, Representative Plaintiffs have established adequacy here because neither they nor their counsel "have any conflicts of interest with other class members," and they will "prosecute the action vigorously on behalf of the class." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

Fifth, Defendants appear to have no independent argument about Rule 23(b)(2), arguing simply that Plaintiffs do not satisfy Rule 23(a). Opp. 27.  Regardless, Plaintiffs are a textbook Rule 23(b)(2) class, because they raise the same facial challenges to a general policy, each class member faces the same threat of arrest, prosecution, and expulsion based on H.B. 4156, and the relief they seek, an injunction blocking the statute's enforcement, would apply equally to the entire class. Mot. for Class Cert. 15–16, ECF No. 61. *See also* Fed. R. Civ. P. 23(b)(2); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (23(b) is "almost automatically satisfied in actions primarily seeking injunctive relief."); *Dukes*, 564 U.S. at 360–61 (Rule 23(b)(2) applies when "a single injunction or declaratory judgment would provide relief to each member of the class")).

Finally, Defendants argue, in a footnote, that the Court should not grant statewide relief. Opp. 27 n.7. But a statewide injunction is necessary to ensure complete relief for the Plaintiffs. *See Idaho*, 2025 WL 1237305, at *20 (holding that "the issuance of a preliminary injunction on a statewide basis is necessary and appropriate" under nearly identical

circumstances); *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1538, 1542, 1548 (10th Cir. 1994) (affirming preliminary injunction applying to all Medicaid-participating nursing homes in Kansas in a case brought by about half of the state's nursing homes).

## CONCLUSION

The Court should grant a temporary restraining order or preliminary injunction barring the enforcement of H.B. 4156.

Dated this 16th of May, 2025                         Respectfully submitted,

                                                      /s/ *Devraat Awasthi*
Noor Zafar*                                           Megan Lambert (OK Bar. No. 33216)
Omar Jadwat*                                          Devraat Awasthi (OK Bar. No. 35544)
Grace Choi*                                           AMERICAN CIVIL LIBERTIES UNION OF
AMERICAN CIVIL LIBERTIES UNION                            OKLAHOMA FOUNDATION
    FOUNDATION, IMMIGRANTS' RIGHTS                     P.O. Box 13327
    PROJECT                                           Oklahoma City, OK 73113
125 Broad Street, 18th Floor                          T: (405) 525-3831
New York, NY 10004                                    *mlambert@acluok.org*
T: (212) 549-2660                                     *dawasthi@acluok.org*
*nzafar@aclu.org*
*ojadwat@aclu.org*
*gchoi@aclu.org*


Spencer Amdur*                                        Elissa Stiles (OK Bar. No. 34030)
Oscar Sarabia Roman*                                  RIVAS AND ASSOCIATES
Cody Wofsy*                                           P.O. Box 470348
AMERICAN CIVIL LIBERTIES UNION                        Tulsa, OK 74147
    FOUNDATION, IMMIGRANTS' RIGHTS                    T: (918) 419-0166
    PROJECT                                           F: (918) 513-6724
425 California Street, 7th Floor                      *estiles@rivasassociates.com*
San Francisco, CA 94104
T: (415) 343-0770
*samdur@aclu.org*
*osarabia@aclu.org*                                   *Attorneys for Plaintiffs*
*cwofsy@aclu.org*                                     **Pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025, I filed a true and correct copy of the foregoing

using the CM/ECF system, which will serve the filing on all counsel of record.

*/s/ Devraat Awasthi*
Devraat Awasthi